UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KIM RENE HICKS,

                        Plaintiff,

   v.                                              **DECISION AND ORDER**
                                                                  09-CV-1071S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

      1.      Plaintiff Kim Rene Hicks challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since August 1, 2006, due to human immunodeficiency virus ("HIV") infection, lumbar spine injury, carpal tunnel syndrome, asthma, and a low blood platelet count. Plaintiff contends that her impairment has rendered her unable to work. She therefore asserts that she is entitled to disability benefits under the Act.

      2.      Plaintiff filed an application for disability insurance benefits on August 31, 2006, which was denied. Plaintiff then requested an administrative hearing, which was held before ALJ Nancy L. Gregg on December 1, 2008, and at which Plaintiff appeared with counsel and testified. On June 29, 2009 the ALJ issued a decision denying Plaintiff's application. On November 5, 2009, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on December 17, 2009, challenging Defendant's final decision.[1]

---

[1] The ALJ's June 29, 2009 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On July 12, 2010, the Government and Plaintiff filed Cross Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

        9.    In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since August 31, 2006, the application protective filing date (R. at 14, 15);[2] (2) Plaintiff's mild Grade 1 spondylolisthesis of L3 and L4 and degenerative disc disease at L3-L4 and human immunodeficiency virus ("HIV") infection with acquired immunodeficiency syndrome ("AIDS") are "severe" impairments within the meaning of the Act, while plaintiff's asthma, depressive disorder, and bilateral carpal tunnel syndrome are non-severe (R. at 15, 16); (3) Plaintiff's impairments or combination of impairments do not meet or equal the criteria necessary for finding a disabling impairment under the regulations (R. at 16); (4) Plaintiff retains the residual functional capacity ("RFC") to perform less than a full range of light work . . . She is able to lift, carry, push, and pull up to 20 pounds occasionally, and stand/walk for at least two hours total but less than six hours in an eight-hour workday . . . She can also sit for about six hours total in an eight-hour workday with normal breaks. (R. at 21); and (5) Plaintiff is capable of performing her past relevant work as a collections clerk and a telemarketer (both sedentary work), but is not capable of performing her past

---

[2] Citations to the underlying administrative record are designated as "R."

work as a housekeeper/cleaner or a sewing machine operator because these jobs require an RFC for at least light work (R. at 28). In sum, the ALJ concluded that given her RFC, Plaintiff was able to work as a telemarketer and as a collections clerk in ways those occupations are generally and actually performed. (R. at 28). The ALJ therefore determined that Plaintiff was not disabled under the Act. (R. at 29).

10. Plaintiff first contends that the ALJ improperly substituted her own opinion for that of her treating physician's. Plaintiff's treating physician, Dr. Gbadamosi, noted on January 6, 2009, that Plaintiff had repeated episodes of severe pain and nausea. (R. at 474). He also opined that she may have marked limitations in maintaining attention and working with others. (Id.) He suggested that these impairments were "probably" related to AIDS. (Id.) Another physician, Dr. Dave, suggested that Plaintiff may have limitations in walking and standing. (R. at 27).

The ALJ noted these assessments, but found that they were not supported by substantial medical evidence and that any physical impairment Plaintiff had was not disabling. (R. at 26, 27). The ALJ referred to Plaintiff's numerous System Reviews, in which Plaintiff tested negative for chills, fever, and back pain. (R. at 21, 26). Additionally, the ALJ relied on an RFC assessment conducted by a State Agency on December 26, 2006, which concluded that Plaintiff retained the RFC for light exertion in a low contact work setting. (R. at 27, 287-91). Moreover, the ALJ noted that on January 8, 2008, the Erie County Medical Center discharged Plaintiff to return to full work duty with no job modification necessary. (R. at 27, 394). Despite Dr. Dave's assessment that Plaintiff had limitations in walking and standing, the ALJ noted that Plaintiff did not have any gait disturbance or abnormality when seen by her treating physician for an annual examination. (R. at 27, 368). Dr. Gbadamosi

also suggested that Plaintiff could sit and stand for 60 minutes at a time and occasionally lift 10 pounds. (R. at 457).

These medical opinions and objective evidence are substantial evidence that support the ALJ's decision. Because she relied on the entire medical record, the ALJ did not merely make an uninformed decision and disregard the physicians' opinions. See also 20 C.F.R. § 46.972(e)(1) (stating that final determinations of disabilities are reserved for the Commissioner). This Court therefore finds no error.

11. Plaintiff next contends that the ALJ's credibility finding is not supported by substantial evidence. In addition to examining a claimant's subjective medical history, an ALJ will consider other factors in assessing a plaintiff's credibility, such as (I) plaintiff's daily activities; (ii) location, duration, frequency, and intensity of pain and symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness and side effects of any medications taken to alleviate the pain and symptoms; (v) treatment other than medication; (vi) any measures used to relieve the pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain and symptoms. 20 C.F.R § 404.1529(c)(3).

12. The ALJ acknowledged Plaintiff's subjective complaints, including standing and walking with difficulty, suffering heart palpitations, feeling tired, and reacting adversely to her medication. (R. at 23). She also considered Plaintiff's testimony that she cannot do house work, feels weak, and suffers from a compromised immune system. Id. Additionally, the ALJ noted Plaintiff's susceptibility to cold/flu symptoms due to her HIV, specifically a cold that lasted over one month. (R. at 24).

But the ALJ also noted Plaintiff's non-compliance with medication and evidence of substance abuse. (R. at 26). Plaintiff was discharged numerous times from Bailey LaSalle

Addiction Output Clinic between September 2005 and December 2006 for non-compliance. (R. at 301, 304, 307, 314, 317). Plaintiff had a prescription for Penicillin VK 500 mg filled on May 28, 2008. But the bottle remained three-quarters full on December 1, 2008, the date of the hearing. Plaintiff had a prescription for Loperamide 2 mg two tablets every six hours filled on August 31, 2007, but several pills remained in the bottle at the hearing. This suggests infrequent use or failure to take medication as prescribed. (R. at 24). When a claimant fails to take medication as prescribed without good reason, his or her credibility is undermined. See Albers v. Astrue, No. CV-10-5007, 2011 WL 2713414, at *7 (E.D. Wash. July 12, 2011).

Plaintiff also complained of respiratory problems (bronchitis, acute cough) that may be attributed to her HIV infection. (R. at 358, 404, 408). The ALJ noted this, but suggested that these problems could also be related to smoking cigarettes. (R. at 26). Plaintiff failed to quit smoking despite being repeatedly advised to do so. (R. at 26).

The ALJ also considered Plaintiff's inconsistent records with regard to substance abuse. For example, on November 27, 2006, Plaintiff told Dr. Dave that she had quit drinking and using cocaine six months prior. (R. at 278). But Plaintiff tested positive for cocaine on May 2 and August 10, 2006. (R. at 257, 270). Inconsistency in substance abuse reports and tests is evidence that supports the ALJ's adverse credibility finding. See Hodge v. Astrue, No. 07-CV-0162, 2009 WL 1940051, at *12 (N.D.N.Y. July 2, 2009) (discussing that inconsistencies in the record that indicate substance abuse may factor into the ALJ's assessment of Plaintiff's credibility).

Pursuant to 20 C.F.R. § 404.1529(c)(3)(ii), the ALJ also noted Plaintiff's complaints in her System Reviews with her treating physician, Dr. Gbadamosi. Despite earlier claims of back pain, Plaintiff tested negative on February 6, 2008, for arthralgias, back pain, and

myalgias. (R.at 26). In fact, several times between June 27, 2007, and October 30, 2008, Plaintiff tested negative for back pain. (R. at 358, 361, 366, 402, 408, 411). The ALJ also acknowledged that Plaintiff had full flexion, extension, lateral flexion, and rotary movement, and that extension reduced her pain. (R. at 26). These findings undermine Plaintiff's credibility.

The ALJ properly considered the Plaintiff's subjective complaints. Pursuant to 20 C.F.R § 404.1529(c)(3), however, the ALJ also took into account other factors such as Plaintiff's failure to adhere to medication recommendations, her drug and alcohol use, her smoking habits, and the negative ROS reports. In sum, there is substantial evidence that supports the ALJ's adverse credibility assessment. See Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999) (stating that deference is given to the ALJ's decision because [s]he is in the best position to assess Plaintiff's credibility).

13.   Plaintiff also challenges the determination that she does not meet or equal the listings of 14.08, *Human Immunodeficiency Virus (HIV) Infection.* Plaintiff refers specifically to 14.08K, which directs a finding of disability if a patient has:

> Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A-J . . . resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404 Appendix 1

The record supports the ALJ's determination that Plaintiff's HIV infection does not meet the requirements for listing under 14.08K. Plaintiff's HIV was not associated with any viral infections, fungal infections, protozoan or helminthic infections, or malignant neoplasms (manifestations listed in 14.08A-J). (R. at 474). Although Dr. Gbadamosi noted that Plaintiff was diagnosed with tuberculosis (a bacterial infection), she was treated for it on June 15, 2003. This treatment was administered several years before Plaintiff's application for disability benefits on August 31, 2006. Therefore, Plaintiff's manifestations of tuberculosis are not repeated.[3]

Despite Dr. Gbadamosi's November 30, 2008 assessment that Plaintiff has marked limitations in maintaining concentration, working with others, and accepting supervision, Plaintiff has failed to show that these limitations are due to repeated manifestations of HIV. In fact, Plaintiff refers to only one inconclusive medical assessment in which her neuropathy was found to be "probably" related to AIDS. Moreover, Dr. Gbadamosi treated Plaintiff for more than two years, consistently noting that she was in no apparent distress, was well nourished, and mentally alert. (R. at 405, 407, 409, 412). Also, when Dr. Gbadamosi found Plaintiff positive for hot flashes and excessive sweating, he attributed them to menopause, not HIV. (R. at 403, 417).

14. After examining the record, this Court finds that the medical evidence supports the ALJ's conclusions and decision. Finding no reversible error, this Court will

---

[3] "Repeated" as defined in 20 C.F.R. Pt. 404 Appendix 1 14.00 I3:

> The manifestations occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks.

grant Defendant's Motion for Judgment on the Pleadings.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.


Dated: July 29, 2011
       Buffalo, New York


                                   /s/William M. Skretny
                                  WILLIAM M. SKRETNY
                                        Chief Judge
                                United States District Court